RAILROADS—MAINTENANCE—HIGHWAY CROSSINGS—CHANGE OF GRADE—ORDER OF RAILROAD COMMISSIONERS.

An order of the board of railroad commissioners for a change of a highway crossing a railroad at grade to an undercrossing, which would render the highway impassable for considerable portions of the year on account of overflow, and the only relief afforded would be a proposed grade crossing maintained by the railroad, which it would permit the public to use at its will, was improper.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 291–296.]

Appeal from Board of Railroad Commissioners.

In the matter of the petition of the Delaware, Lackawanna & Western Railroad Company, under section 62 of the railroad law, as to a highway grade crossing of the railroad in the town of Vestal, Broome county. From a decision of the board of railroad commissioners authorizing a change of the crossing from grade to an undercrossing, Jacob B. Crane appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

A. D. Wales, for appellant.
Taylor L. Arms, for respondent.

COCHRANE, J. Under section 62 of the railroad law (Laws 1890, c. 565, as amended by Laws 1899, p. 770, c. 359) the Delaware, Lackawanna & Western Railroad Company instituted this proceeding before the board of railroad commissioners for the purpose of changing a highway which crosses its railroad at grade near its station of Vestal, in the town of Vestal, Broome county, so that said highway may pass beneath the tracks of said railroad and such grade crossing be abolished. The appellant, Jacob B. Crane, is the owner of a feed mill and other property located in one of the angles formed by the intersection of the railroad with the highway, and by the provisions of the statute referred to is a *necessary party to this proceeding. The proposed change involves the depression of the highway immediately beneath the railroad to the depth of eight feet below the present level of the highway. The topography and formation of the surrounding country and the propinquity of the Susquehanna river are such that the highway at its present grade in times of high water is frequently flooded. Hence it is apparent that such an unusual depression of the highway beneath the railroad would at such times of high water render the highway entirely impassible. The engineer of the petitioner in his report to the board of railroad commissioners said in reference to the proposed change:

"With the exception of this high-water question, the scheme seems to be feasible. By just what method it is proposed to cross in case of flood is not made clear on the plan."

The division engineer of the petitioner, who prepared the plans for
the proposed undercrossing and who was examined as a witness for
the petitioner, testified as follows in reference to said plans:

"There is also a provision made for a grade crossing in the case of high
water. That district through there is subject to overflow, and we have pro-
vided on the easterly side of this subway a grade crossing of our tracks which
would be used only in the case of high water. Q. That is, it won't be a pub-
lic highway, but it will be one that could be used by the public, and which
the road would maintain and permit the use of in the case of emergency—is
that the idea? A. Yes, sir; that is the idea. * * * Q. And that would be
accessible to pedestrians and to travelers on the road with teams? A. Ac-
cessible! Oh, it wouldn't be accessible as far as crossing the tracks is con-
cerned only in case of high water. In other words, this would be a barred
crossing. * * * Q. Would it be barred at times when not in use? A. Yes."

His final testimony was that the highway in times of average high
water, according to the proposed change, would be submerged to a
depth of 8 feet under the railroad; such water decreasing to a mini-
mum of depth for 200 feet in either direction from the railroad to the
natural grade of the highway. It was therefore conclusively estab-
lished before the commissioners that the proposed subway would at
times of average high water be impassable. To obviate this difficulty,
it was proposed, as indicated in the testimony above quoted, to estab-
lish a grade crossing for use in times of high water. It furthermore ap-
peared that, in order to maintain a grade crossing for use at such times,
it would be necessary for the railroad company to acquire land from
private owners for such purpose. There seems to be no way of ob-
viating this difficulty. The idea of elevating the railroad so as to mini-
mize or lessen the depression in the highway was considered imprac-
ticable by the division engineer as testified by him.

It thus appears that the grade crossing cannot be eliminated without
at the same time absolutely eliminating the use of the highway for a
portions of the time. A change which renders a highway at certain
portions of the year entirely impassable, and which at such times not
only interferes with its usefulness, but absolutely destroys the same,
cannot be sanctioned. It is not proposed to divert the travel on this
highway to another highway or crossing; but, as far as the record
discloses, the effect of this change will be to entirely stop public travel
at certain periods without providing a substituted way for the use of
the public.

The suggestion is now made, as it was made before the commis-
sioners, that the railroad company will provide a grade crossing for
temporary use in times of high water. The decision of the commis-
sioners makes no such provision. While it may be true that the pro-
posed change must be under the supervision and subject to the approval
of the commissioners, there is nothing in the record to show that there
will be any provision for crossing the railroad at grade in times of ne-
cessity. Moreover, the proposition of the railroad company that it
will "permit" the public to cross its road at grade is entirely inadequate.
The traveling public should not be subjected to the whim or caprice of
the railroad company as to the existence of such exigencies as to render
it proper for the company to "permit" the use by the public of the grade
crossing. It should not be left to the determination of the company

as to when the crossing should be "barred." If there is to be a grade crossing for the public use, it should be as free and as accessible as the subway beneath the railroad, and no more subject to control by the railroad company than any other grade crossing. We recognize the desirability of abolishing grade crossings wherever practicable. We also recognize the rule that the court should not reverse the decision of the commissioners unless it is clearly made to appear that their decision was founded upon an erroneous legal principle or was contrary to the clear weight of evidence. We think, however, that the change proposed in this case is impracticable for the reasons heretofore stated, and that the decision of the commissioners herein, in effect, practically abolishes for substantial portions of time a much traveled highway without providing therefor any practical substitute, and that a decision which accomplishes such a result cannot be sustained.

The decision must be reversed, with $50 costs and disbursements. All concur.